UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| WILLIAM ANTHONY HEMBY,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | 5:23-CV-05029-DW<br><br>ORDER |
|---|---|

William Anthony Hemby filed a complaint (Doc. 1) and brief (Doc. 9) appealing the final decision of the Commissioner[1] in which his claim for disability insurance benefits was denied. The Commissioner denies Hemby is entitled to benefits. (Doc. 11). Hemby filed a response brief. (Doc. 12).

The Court reviewed the parties' briefs and administrative record, including the transcripts and medical evidence and for the reasons below, the claimant's complaint wherein he moves to reverse the Commission (Doc. 1) is granted the Commissioner's motion to affirm the decision of the Commissioner (Doc. 11) is denied.

---

[1] Martin O'Malley became the Commissioner of SSA on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), O'Malley is automatically substituted as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

In September 2012, Hemby filed an application for Social Security disability benefits alleging an onset of disability date of December 31, 2007. (AR 2275[2]). At the administrative hearing, Hemby amended the onset date to February 9, 2011, his fifty-fifth birthday. Id. The claim was initially denied on April 11, 2013, and was denied upon reconsideration on May 8, 2013. Id. at p. 2276. An evidentiary hearing was held on October 2, 2014, in Columbia, South Carolina. The Administrative Law Judge (ALJ) denied Plaintiff's claim on January 22, 2015. Id. at pp. 2315-2329. On March 11, 2016, the Appeals Council declined to review Hemby's case. Id. at pp. 2336-2341.

On August 10, 2017, the United States District Court for the District of South Carolina remanded the action to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g). Hemby v. Berryhill, 2:16-cv-01212, July 27, 2017; AR 2269-2284. On remand, the ALJ denied Hemby's claims in a written decision dated September 24, 2018. (AR 2291-2308). The Appeals Council again remanded this case on May 23, 2019. Id. at pp. 2309-2313. On January 16, 2020, the ALJ denied Hemby's claims. Id. at pp. 2342-2362. On October 20, 2021, the Appeals Council remanded the action. Id. at pp. 2363-2369.

After a fourth hearing, the ALJ denied Hemby's claim on July 20, 2022. Id. at pp. 2138-2164. On March 1, 2023, the Appeals Council declined to

---

[2] The court will cite to information in the administrative record as "AR ___." (Docs. 6, 7, & 8).

assume jurisdiction, making the July 20, 2022, decision the final decision of the Commissioner. Id. at pp. 2131-2134. It is from this decision that Hemby timely appeals.

## I. STANDARD OF REVIEW

The issue before this court is whether the ALJ's decision that Hemby was not under a disability, as defined in the Social Security Act, through December 31, 2012, is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by "good reason" and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed, 399 F.3d at 920 (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI which are:

> **Step One:** Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the applicant is engaged in substantial gainful activity, he is not disabled, and the inquiry ends at this step.
>
> **Step Two:** Determine whether the applicant has an impairment or combination of impairments that are severe, i.e. whether any of the applicant's impairments or combination of impairments significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If there is no such impairment or combination of impairments the applicant is not disabled, and the inquiry ends at this step. The regulations prescribe a procedure for analyzing mental impairments to determine whether they are severe, which includes completion of a Psychiatric Review Technique Form. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. § 1520a.
>
> **Step Three:** Determine whether any of the severe impairments identified in Step Two meets or equals a listing in Appendix 1, Subpart P, Part 404. 20 C.F.R. § 404.1520(d). If an impairment meets or equals a Listing, the applicant will be considered disabled without further inquiry. This is because the regulations recognize the "Listed" impairments are so severe that they prevent a person from pursuing

any gainful work. Heckler v. Campbell, 461 U.S. 458, 460 (1983). If the applicant's impairment(s) are severe but do not meet or equal a Listed impairment the ALJ must proceed to step four.

**Step Four:** Determine whether the applicant is capable of performing past relevant work. To make this determination, the ALJ considers the limiting effects of all the applicant's impairments (even those that are not severe) to determine the applicant's residual functional capacity ("RFC"). If the applicant's RFC allows him to meet the physical and mental demands of his past work, he is not disabled. 20 C.F.R. §§ 404.1520(e); 404.1545(e). If the applicant's RFC does not allow him to meet the physical and mental demands of his past work, the ALJ must proceed to Step Five.

**Step Five:** Determine whether any substantial gainful activity exists in the national economy which the applicant can perform. To make this determination, the ALJ considers the applicant's RFC, along with his age, education, and past work experience. 20 C.F.R. § 1520(f).

20 C.F.R. § 404.1520. The plaintiff bears the burden of proof at steps one through four. Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994); 20 C.F.R. § 404.1512(a). At step five, the burden of proof shifts to the Commissioner, which "is neither statutory nor regulatory, but instead, originates from judicial practices." Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999). "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

## II. DISCUSSION

Social Security law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416, 423(d)(1)(A); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The SSA established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation ends as the ALJ found that the claimant is not disabled. Id. The five-step sequential evaluation process evaluates whether the claimant:

> (1) is presently engaged in a "substantial gainful activity"; (2) has a severe impairment - one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) has the residual functional capacity to perform . . . past relevant work; and (5) can perform the past work, if the claimant cannot, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998) (quotation modified).

The ALJ applied the five-step test and determined that Hemby was not disabled. (AR 2141-63). In evaluating step one, the ALJ determined that

Hemby had not engaged in substantial gainful activity during the period from his alleged onset date of December 31, 2007, through his date last insured of December 31, 2012. Id. at p. 2144.

At step two, the ALJ found that Hemby suffered from these "severe impairments: status post C3-4 and C6-7 cervical discectomy secondary to degenerative disc disease, status post arthroscopic surgery of the bilateral shoulders due to degenerative joint disease, status post arthroscopic surgery to the left hip due to degenerative joint disease, status post arthroscopic surgery to the right knee due to degenerative joint disease, migraine headaches, and obesity." Id.

At step three, the ALJ opined that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Id. at p. 2146.

In evaluating step four, the ALJ resolved "that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally balance, stoop, and climb ramps and stairs and never kneel, crouch, crawl, and climb ladders, ropes, or scaffolds; he can occasionally reach overhead bilaterally; the claimant must avoid concentrated exposure to dangerous

moving machinery and unprotected heights; and she[3] can frequently handle and finger bilaterally." Id. at pp. 2149-50.

At step five, the ALJ opined that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a security manager and program aid. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" Id. at p. 2162. The ALJ concluded Hemby "was not under a disability . . . at any time from December 31, 2007, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(f))." Id. at p. 2163.

Hemby challenges three findings: (1) whether the ALJ erred in concluding Hemby's severe impairment of migraine headaches did not have a corresponding functional limitations; (2) whether the ALJ erred in concluding Hemby's carpal tunnel syndrome ("CTS") was not a severe impairment; and (3) whether the ALJ erred in determining Hemby's credibility. (Doc. 9, p. 1). The Commissioner argues there is substantial evidence to support the ALJ's decision. (Doc. 11).

### A. ALJ erred in considering Hemby's migraine headaches

Hemby argues the ALJ erred in concluding Hemby's severe impairment of migraine headaches did not have a corresponding functional limitation. (Doc. 9, p. 10). Hemby states that "[w]hile ALJ Vinson concluded that migraine headaches were a severe impairment, none of the functional limitations she

---

[3] The ALJ improperly referred to Hemby as a female. The ALJ also made reference to the Claimants "regular gynecological exams." Id. p. 2151

8

noted in her RFC corresponded to Plaintiff's migraine headaches. Rather, her decision to conclude that migraine headaches were a severe impairment was to give passing deference to the previous District Court decision." Id. at p. 12.

At step four, in determining whether the applicant is capable of performing past relevant work, the ALJ must consider the limiting effects of all the applicant's impairments to determine the applicant's RFC. Here, although the ALJ deemed Hemby's migraine headaches to be a severe limitation, the ALJ failed to consider the limiting effects of Hemby's migraine headaches. This case is remanded so the ALJ can consider the corresponding functional limitations caused by Hemby's migraine headaches.

### B. ALJ erred in considering Hemby's carpal tunnel syndrome

Hemby asserts his carpal tunnel syndrome (CTS) "is a severe impairment, as Plaintiff's left-handed weakness in gripping and using more than occasionally goes beyond a slight abnormality. Plaintiff's testimony regarding dropping objects, and his inability to type or work on a computer for more than 30 minutes before his hands go numb is supported by the medical evidence of record, including the statements by Dr. Leonard and Dr. Varma. (AR 1345, 1531-44.)" (Doc. 9, p. 14).

Hemby stated "Dr. Leonard noted on May 9, 2012, that Plaintiff had weakness and pain in the left arm proximally and was found to have a tumor in the left brachium around the MSK nerve. This resulted in tingling and

9

numbness, impairing both hands."[4]  (Doc. 9, p. 14).  The progress note written on May 9, 2012, was written by Dr. John Baker.  (AR 845-47).[5]

Hemby states "Dr. Varma noted that Plaintiff drops objects from his left hand occasionally and has also noticed he has difficulty in doing fine tasks that require use of both hands, such as opening jars.  (AR 1535)."  (Doc. 9, p. 14).  While this is a correct citation, it was written on February 15, 2010, one year prior to his alleged disability onset date.  Further, Dr. Varma noted that Hemby's symptoms were not related to CTS.  Id. at p. 1536.

The ALJ cited to AR 833, 839, 845, and 847 for the proposition that Hemby was diagnosed with mild CTS and "there were no significant problems or complaints noted with grip strength, numbness, or pain in his hands or wrists[.]"  (AR 2145).  These citations do not support the ALJ's finding.

First, in AR 833, Hemby "reports numbness in left arm due to" having a "tumor in the left deltoid muscle."  Second, AR 839 states Hemby has "[m]ild bilateral neuropaties at te wrist onsistent wit arpal tunnel syndrome."  Third, as previously discussed, in AR 845 and 847, Dr. Baker opined that Hemby had CTS and "had weakness and pain in the left arm proximally, found to have a tumor in the left brachium around MSK nerve.  He now discussing tingling and numbness, impairing both hands."  These citations contradict the ALJ's finding.  Thus, the ALJ's decision is not supported by substantial evidence and remand is required.

---

[4] AR 1345 is a page from a report written by Dr. Leonard on November 22, 2011.  (AR 1345).
[5] Dr. Baker's treatment note is also at AR 1435-37.

### C. The ALJ erred in determining Hemby's credibility

Hemby argues the ALJ "erred in finding Plaintiff not fully credible with respect to his frequency of migraine headaches, his grasping and handling limitations, and concentration limitations associated with pain and pain management." (Doc. 9, p. 14). Commissioner argues the ALJ properly considered Hemby's subjective complaints. (Doc. 11, pp. 10-13).

"If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [the court] will normally defer to that judgment." Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001); see Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (holding that where adequately supported, credibility findings are for the ALJ to make).

The Eighth Circuit has repeatedly "held that acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 881 (8th Cir. 2009). When evaluating a claimant's credibility as to subjective complaints, the ALJ must consider the Polaski factors.[6] Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021); Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). However, "[t]he ALJ is not required to discuss each Polaski factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" Halverson, 600 F.3d at 932 (quoting Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009)).

---

[6] The Polaski factors largely mirror the regulations set forth in 20 C.F.R. §§ 404.1529 and 416.929. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

These factors include: "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." Grindley, 9 F.4th at 630. "Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." Id.; see Reed, 399 F.3d at 920 (holding an ALJ may determine that a claimant's subjective complaints are not credible when there is objective medical evidence to the contrary; but, an "ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence"). "[A]n ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." Jones v. Astrue, 619 F.3d 963, 975 (8th Cir. 2010).

The court is to defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a "good reason" for doing so. Hogan, 239 F.3d at 962. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988). The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision ... [the court must also] take into account whatever in

the record fairly detracts from that decision." Reed, 399 F.3d at 920 (quoting Haley, 258 F.3d at 747).

> In this case, the ALJ determined that Hemby's
>
> medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record. Here, the claimant has described daily activities and exhibited behavior that is inconsistent with the claimant's allegations of disabling symptoms and limitations. Additionally, the objective medical records do not completely corroborate his statements and allegations regarding his impairments and resultant limitations.

(AR 2150). The ALJ thoroughly outlined and considered Hemby's medical records upon which she based her decision. Id. at pp. 2151-58.

The ALJ failed to properly consider Hemby's daily activities. The ALJ opined Hemby's testimony "that he drove a car and could lift a keg of beer," was inconsistent with his allegations of disabling symptoms and limitations. Id. at p. 2159. Hemby testified that when he worked at Bush Stadium, he "would assist [by] getting the kegs out." Id. at pp. 2158-59. Hemby also testified that he felt like he could not do that job anymore because his "right knee was getting to the point where [he] couldn't do all of the walking required. [His] back was also giving me a lot of problems. [He] subsequently got braces for both. Migraine headaches come on, and [he]'d have to take . . . time off." Id. at p. 2188. He testified he was missing probably 8 to 16 hours a week." Id. It is true that Hemby testified that he drove to the hearing; he also testified that he only leaves his home two to three times a month to go to the grocery store or to Shaw Air Force Base. Id. at p. 2215. The ALJ did not properly consider

13

these activities of daily living. The ALJ also did not properly consider the effect of Hemby's structured setting and his ability to function outside of those settings, as required by the regulations. Nowling v. Colvin, 813 F.3d 1110, 1122-23 (8th Cir. 2016) (referencing 20 C.F.R. § pt. 404, subpt. P, app. 1). The ALJ erred in discounting Hemby's credibility. It is not the court's role to re-weigh the evidence and, even if the court would decide the case differently, it cannot reverse the ALJ's decision if the decision is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801. Without restating the evidence of the record above, the court does not find that the ALJ's decision in this case is based on substantial evidence nor supported by good reason.

### D. Type of Remand

Hemby requests that the court reverse the ALJ's decision finding that Plaintiff is entitled to benefits. Alternatively, Hemby asks the court for a remand. Docket 1 at 4. Because of the court's "abundant deference to the ALJ," a remand with instructions to award benefits is only appropriate where "the record overwhelming supports such a finding." Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (quoting Cox v. Apfel, 160 F.3d 1203, 1210 (8th Cir. 1998)). Otherwise, the court should remand for further administrative findings. Here, it is appropriate that the case be remanded for further administrative findings.

### ORDER

Based on the above analysis, it is hereby

14

ORDERED that claimant's motion to reverse the decision of the Commissioner (Doc. 1) is granted.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with the court's analysis.

IT IS FURTHER ORDERED that Commissioner's motion to affirm the decision of the Commission (Doc. 11) is denied.

DATED this 30th day of July, 2024.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge